DAN RAYFIELD
Attorney General
SCOTT KENNEDY #260337
BRIAN SIMMONDS MARSHALL #196129
TY BAIR #251894
Senior Assistant Attorneys General
BRAD MULLEN #245461
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: 971-673-1880
Fax: 971-673-5000
Email: Scott.Kennedy@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Ty.Bair@doj.oregon.gov
Brad.Mullen@doj.oregon.gov

*Counsel for the State of Oregon*

[Additional counsel to appear on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MEHMET OZ, in his official capacity as Administrator for the Centers for Medicare & Medicaid Services, et al.,<br><br>Defendants. | Case No. 6:26-cv-2435-AA<br><br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>EXPEDITED HEARING REQUESTED |

## TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........................................................ ii

LR 7-1 CERTIFICATION ........................................................ 1

MOTION ........................................................ 1

MEMORANDUM OF LAW ........................................................ 1

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 2

LEGAL STANDARD ........................................................ 3

ARGUMENT ........................................................ 3

I. Plaintiffs are Likely to Succeed on Their Claim That H.R. 1's Work Requirement Exceeds Congress's Spending Power ........................................ 3

II. The Plaintiff States Will Suffer Irreparable Harm Absent an Injunction ............... 4

III. The Remaining Equitable Factors Favor an Injunction ........................................ 8

CONCLUSION ........................................................ 9




Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ....................3, 4

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022) ....................5

*Ariz. Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ....................4, 9

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ....................5, 9

*Betschart v. Oregon*,
103 F.4th 607 (9th Cir. 2024) ....................8

*City of Evanston v. Sessions*,
No. 18 C 4853, 2018 WL 10228461 (N.D. Ill. Aug. 9, 2018) ....................5–6

*County of Santa Clara v. Trump*,
250 F. Supp. 3d 497 (N.D. Cal. 2017) ....................8

*Doe v. Trump*,
157 F.4th 36 (1st Cir. 2025) ....................6

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021), *overruled on other grounds by Arizona All. For Retired Ams. v. Mayes*, 186 F.4th 622 (2026) (en banc) ....................3, 6, 7, 8

*Elrod v. Burns*,
427 U.S. 347 (1976) ....................5

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ....................5

*Nat'l Fed. of Indep. Bus v. Sebelius*,
567 U.S. 519 (2012) .................... *passim*

*New York v. DHS*,
969 F.3d 42 (2d Cir. 2020) ....................6

*Nken v. Holder*,
556 U.S. 418 (2009) ....................8

*Oregon v. Trump*,
802 F. Supp. 3d 1277 (D. Or. 2025),
*appeal dismissed*, 171 F.4th 1144 (9th Cir. 2026) ....................6



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

*RENEW Ne. v. U.S. Dep't of Interior*,
No. 25-cv-13961, 2026 WL 1078282 (D. Mass. Apr. 21, 2026)........................................6

*Tennessee v. Dep't of Educ.*,
104 F.4th 577 (6th Cir. 2024) ........................................................................................6

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ......................................................................................6

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................................................................................................3, 4, 8

**STATUTES, REGULATIONS, RULES**

42 U.S.C.
§ 1396-1 ..........................................................................................................................3
§ 1396a(xx) .......................................................................................................... *passim*
§ 1396c............................................................................................................... *passim*

Pub. L. No. 119-21, 139 Stat. 72 (2025)................................................................... *passim*

Fed. R. Civ. P. 65 .................................................................................................................1

Local Rule 7-1(a) .................................................................................................................1



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Plaintiffs' counsel certify that they offered to confer with the Civil Chiefs of the U.S. Attorney's Office for the District of Oregon on this motion immediately after the filing of the Complaint. The U.S. Attorney's Office was not in a position to confer on this motion today. Plaintiffs' counsel anticipate that Defendants will oppose this motion.

## MOTION

Plaintiffs move under Rule 65 for a preliminary injunction barring Defendants from withholding any federal Medicaid funding under 42 U.S.C. § 1396c from the Plaintiff States for failure to comply with the community engagement requirements at 42 U.S.C. § 1396a(xx). This motion is supported by the following memorandum of law and the declarations filed simultaneously with the motion.

This relief is sought as an interim measure during the pendency of Plaintiffs' Motion for Summary Judgment. The statutory provision that is the subject of this lawsuit must be implemented by January 1, 2027. 42 U.S.C. § 1396a(xx)(1). If the Court is able to decide Plaintiffs' pending Motion for Summary Judgment before the end of this year, this motion may be denied as moot. Alternatively, if the Court is unable to issue a decision on Plaintiff's Motion for Summary Judgment by the end of the year, Plaintiffs respectfully request that it enter a preliminary injunction.

## MEMORANDUM OF LAW

### INTRODUCTION

This case concerns a new Medicaid work requirement created in 2025 by H.R. 1—sometimes referred to as the "One Big Beautiful Bill Act." That legislation conditions the Plaintiff States' Medicaid funding on their implementation of what is, in effect, a transformative new eligibility system that will leverage healthcare coverage to incentivize work. For the reasons explained in the Plaintiff States' Motion for Summary Judgment, that condition is unconstitutionally coercive because it "leaves the States with no real option but to acquiesce."



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

*National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 582 (2012) (*NFIB*). This motion expands on that argument by demonstrating that the equitable considerations warrant preliminarily enjoining Defendants from enforcing this threat to Medicaid funding.

First, the Plaintiff States will suffer irreparable harm to their sovereignty without preliminary relief from this threat. When Congress wields its spending power coercively by offering federal funding with conditions that the States dare not refuse, it overwhelms States' sovereign prerogative to decline participation in a federal program. There is also no question that the States will suffer other forms of irreparable harm—including unrecoverable implementation costs and administrative upheaval—from being forced to implement this transformative federal policy.

At the same time, the balance of equities and public interest overwhelmingly favor maintaining the status quo. After its implementation at the beginning of 2027, H.R. 1's work requirement will trigger mass disenrollments from the Medicaid program. This will eventually leave millions of former and prospective Medicaid beneficiaries with no place to turn for basic healthcare. In practical terms, this means reduced access to prenatal care for those who are pregnant; interruptions in critical treatment for those with chronic conditions; and suspension of medical screening, diagnostics, and preventative care, all of which can avert serious illness and death. In a cruel irony, H.R. 1 will also render these individuals *less* able to work—and expose them to financial catastrophe through increasing medical debt—by depriving them of basic healthcare.

The Plaintiff States therefore ask that Defendants be preliminarily enjoined from withholding federal Medicaid funding from Plaintiff States that decline to adopt H.R. 1's work requirement. That would effectively make participation in this new eligibility system optional, just as the Supreme Court did with the Medicaid expansion it addressed in *NFIB*.

## BACKGROUND

The relevant background for this motion is set forth in Plaintiffs' Motion for Summary Judgment, which is incorporated here by reference. In short, Medicaid's goal has always been to



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

ensure that healthcare is available to those who most need it. *See* 42 U.S.C. § 1396-1. That longstanding purpose changed when Congress enacted H.R. 1 in 2025. *See* Pub. L. No. 119-21, 139 Stat. 172. H.R. 1 imposes a work requirement—euphemistically styled as a "community engagement" requirement—for "applicable individuals," primarily including the expanded population of Medicaid beneficiaries created by the Patient Protection and Affordable Care Act (ACA). *See* 42 U.S.C. § 1396a(xx). In effect, this new requirement conditions that population's continued eligibility for basic healthcare coverage on documentation that each individual has either satisfied the work requirement or demonstrated an exemption. *See generally id.* Moreover, 42 U.S.C. § 1396c allows Defendants to withhold all federal Medicaid funding from a State that declines to implement and enforce this requirement. *See id.* This new requirement applies no later than January 1, 2027. *Id.* § 1396a(xx)(1).

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must demonstrate that (1) it "is likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit permits courts to balance the first and third factors. This means that "serious questions going to the merits" in combination with a balance of hardships tipping *sharply* towards the plaintiff can satisfy those two factors, so long as the plaintiff also shows that an irreparable injury is likely. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) *overruled on other grounds by Arizona All. For Retired Ams. v. Mayes*, 186 F.4th 622, 633 (2026) (en banc).

## ARGUMENT

### I. Plaintiffs are Likely to Succeed on Their Claim That H.R. 1's Work Requirement Exceeds Congress's Spending Power

Plaintiffs are likely to succeed on the merits of their Spending Clause claim for the reasons laid out in the Motion for Summary Judgment, which is incorporated here by reference.



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

In summary, the financial penalty accompanying H.R. 1's work requirement is unconstitutionally coercive and exceeds Congress's spending power. That conclusion flows from *NFIB*, where the Supreme Court held that Congress could not compel States to join the ACA expansion by threatening their existing Medicaid funding because that expansion was effectively a new program, not a mere alteration of the original one. *See* 567 U.S. at 583–84. The rationale from *NFIB* applies, and should lead to the same result, in this case. That is because H.R. 1's work requirement will "dramatically" change Medicaid by "surprising" states with a "shift in kind, not merely degree" around Medicaid eligibility. *Id.* at 584, 583. Under H.R. 1's eligibility system, "Medicaid [will be] transformed into a program" that, for the first time in its 60-year history, is designed to promote *work* by threatening to withdraw healthcare coverage from beneficiaries. *Id.* Congress cannot compel States to accept this new system by threatening their existing Medicaid funds, because when it does so, States lack "a legitimate choice whether to accept the federal conditions in exchange for federal funds." *Id.* at 578.

At a bare minimum, the arguments in Plaintiffs' Motion for Summary Judgment raise "serious questions going to the merits" that, considered together with the equitable factors discussed below, warrant preliminary relief. *All. for the Wild Rockies*, 632 F.3d at 1135.

## II. The Plaintiff States Will Suffer Irreparable Harm Absent an Injunction

To obtain a preliminary injunction, the movant must also "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Absent an injunction, H.R. 1's work requirement will inflict—and has already begun to inflict—multiple irreparable injuries on the Plaintiff States.

*First*, H.R. 1's work requirement—and the associated penalty for non-compliance in 42 U.S.C. § 1396c—irreparably injures the Plaintiff States' sovereign interests. It does so by "using



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

financial inducements to exert a power akin to undue influence." *NFIB*, 567 U.S. at 577.[1] As explained in the Plaintiff States' Motion for Summary Judgment, as with the ACA expansion in *NFIB*, States that fail to comply with H.R. 1's work requirement would be subject to 42 U.S.C. § 1396c, which "provides that if a State's Medicaid plan does not comply with the Act's requirements, [CMS] may declare that further payments will not be made to the State." *NFIB*, 567 U.S. at 581. A State that "opts out of" H.R. 1's work requirement "thus stands to lose not merely a relatively small percentage of its existing Medicaid funding, but *all* of it" under § 1396c (emphasis in original). States faced with that threat have "no real option but to acquiesce." *Id.* at 581, 582.

When that kind of financial "pressure turns into compulsion," it offends "our system of federalism" because it denies the sovereign States "a legitimate choice whether to accept the federal conditions in exchange for federal funds." *Id.* at 577, 578. The Ninth Circuit has expressly recognized that when Congress "extends a federal grant with . . . coercive terms to the States" in this way, it "offends state sovereignty and gives rise to a cognizable injury in fact." *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022). That injury is, of course, cognizable even if a court is "skeptical" about the merits of the claim. *Id.* at 851.

There is also no doubt that this sovereign injury is irreparable. The Ninth Circuit has consistently held that a constitutional violation generally results in irreparable harm. *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) ("If a plaintiff bringing [a claim of an alleged constitutional violation] shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). That is why courts within this circuit have also recognized that a sovereign injury "is itself sufficient to establish irreparable harm." *City of Evanston v. Sessions*, No. 18 C 4853, 2018

---

[1] Except where noted, in all quotations, citations, internal quotation marks, and brackets have been omitted, and emphases have been added.



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

WL 10228461, at *4 (N.D. Ill. Aug. 9, 2018); *Oregon v. Trump*, 802 F. Supp. 3d 1277, 1296 (D. Or. 2025), *appeal dismissed*, 171 F.4th 1144 (9th Cir. 2026) (similar); *see also Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) ("'[I]nvasions of state sovereignty . . . likely cannot be economically quantified, and thus cannot be monetarily redressed,' and as such constitute irreparable harm.").

*Second*, H.R. 1's work requirement is imposing—and will continue to impose—substantial administrative compliance costs on Plaintiff States' Medicaid agencies. Economic harms are generally irreparable when federal sovereign immunity precludes money damages. *See E. Bay Sanctuary Covenant*, 993 F.3d at 677. Courts have therefore recognized that "intensive alterations" to "eligibility verification systems for [] federal programs," like the ones at issue here, constitute irreparable injury because they involve unrecoverable expenses. *Doe v. Trump*, 157 F.4th 36, 79 (1st Cir. 2025); *see also Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025) (finding irreparable harm from requirements stemming from an Executive Order that purported to limit birthright citizenship); *New York v. DHS*, 969 F.3d 42, 86 (2d Cir. 2020) (recognizing that "undertak[ing] costly revisions to [Medicaid] eligibility systems" constitutes irreparable harm); *RENEW Ne. v. U.S. Dep't of Interior*, No. 25-cv-13961, 2026 WL 1078282, at *30 (D. Mass. Apr. 21, 2026) (collecting cases on the irreparability of compliance costs)

As discussed in Plaintiffs' Motion for Summary Judgment, H.R. 1's work requirement requires the Plaintiff States to rapidly implement sweeping changes to their Medicaid eligibility verification systems, hire and train new staff, apprise affected beneficiaries of their obligations, and help those beneficiaries navigate the new process. Sandoe Decl. ¶¶ 20–21, 23–24, 26, 28–29, 34; Wilson Decl. ¶¶ 20, 22–24, 28–30. These administrative changes also carry real costs that burden state budgets. Sandoe Decl. ¶¶ 21, 25, 27–30 (describing the budgetary expenditures, as well as constraints encountered while trying to build out an entirely new administrative system to implement the work requirement); Wilson Decl. ¶¶ 20, 25, 27–30 (same). While Congress appropriated money for these implementation costs, federal funds will offset only a portion of those costs. Sandoe Decl. ¶ 27; Wilson Decl. ¶ 27.



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

*Third*, the disenrollments caused by H.R. 1's work requirement will harm the Plaintiff States in other ways as well. By design, the work requirement will compel the Plaintiff States to disenroll beneficiaries who fail to document the required activities or an applicable exemption. *See generally* 42 U.S.C. § 1396a(xx). Some of those individuals will be disenrolled because they have not satisfied the requirement or met an exemption; others will be disenrolled for purely procedural reasons, such as inadequate documentation, ignorance, or administrative error. Sandoe Decl. ¶¶ 44, 46–47; Wilson Decl. ¶¶ 38–40. While estimates vary from state to state, a substantial share of each Plaintiff State's ACA expansion population is likely to be disenrolled. Sandoe Decl. ¶ 44 (estimating that 200,000 individuals—33% of Oregon's ACA expansion population—will be disenrolled due to the work requirement); *see also* Wilson Decl. ¶¶ 13, 38 (estimating that at least 20% of Washington Apple Health's ACA expansion members—approximately 120,400 individuals—will be disenrolled).

Those disenrollments are not just harmful to the Plaintiff States' residents—they also create unrecoverable costs for the Plaintiff States in multiple ways. For example, when individuals disenrolled from Medicaid seek care at state-funded hospitals for medical emergencies, federal law generally requires those hospitals to provide treatment regardless of the individual's ability to pay. Those uncompensated care costs flow back to the States. Sandoe Decl. ¶ 51; Wilson Decl. ¶ 43. In addition, if individuals are disenrolled for procedural reasons but are then re-enrolled at a later date, some of those individuals will have experienced a decline in health. Sandoe Decl. ¶¶ 47, 52; Wilson Decl. ¶¶ 40, 44. That is because new or chronic non-emergency medical conditions will have gone untreated during the lapse in coverage. And when these individuals are re-enrolled in Medicaid, they will be costlier to insure than they would have been if their coverage had never lapsed. That will drive up the state-funded share of those individuals' Medicaid coverage. Sandoe Decl. ¶ 47; Wilson Decl. ¶ 40.

Because States cannot recover those costs from the federal government, they comprise an irreparable injury. *Cf. E. Bay Sanctuary Covenant*, 993 F.3d at 677. The "budget uncertainty" created by these shifts—and the efforts required to mitigate that uncertainty—also constitute



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

irreparable harm. *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017).

For all these reasons, the Plaintiff States are not just "likely" to suffer irreparable harm in the absence of an injunction, *Winter*, 555 U.S. at 22; they are certain to.

### III. The Remaining Equitable Factors Favor an Injunction

The remaining two equitable factors — the public interest and balance of equities — also strongly favor an injunction. When the government is a party, those two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *E. Bay Sanctuary Covenant*, 993 F.3d at 668.

Here, those factors strongly favor preliminary injunctive relief. First and foremost, in the absence of injunctive relief, H.R. 1's work requirement will be disastrous for public health. There is no dispute that the requirement will cause mass disenrollments—some intended, some unintended—from the Medicaid program. There is also no dispute that most of those disenrolled will lack any means of obtaining non-emergency healthcare. Indeed, under a particularly cruel provision in H.R. 1, individuals disenrolled due to the work requirement will be deemed *ineligible* to obtain subsidized healthcare coverage through an ACA exchange, meaning they will have even less access to healthcare coverage than many wealthier individuals. Sandoe Decl. ¶48; Wilson Decl. ¶ 41.

The public health consequences of these disenrollments will be dire. When people lose access to healthcare coverage, they also lose access to treatment for chronic conditions; diagnostic testing that can detect new or worsening conditions; preventive care that can reduce the risk of serious illness or death; prenatal care that decreases the risks of pregnancy and childbirth; and treatment for addiction. Sandoe Decl. ¶¶ 15, 43, 47, 52–53; Wilson Decl. ¶¶ 15, 37, 40, 44–45. Loss of those kinds of treatment can also increase mortality rates. Sandoe Decl. ¶ 52; Wilson Decl. ¶ 44. In short, people who are disenrolled will get sicker, and eventually, some will die. The stakes, therefore, could not be higher. And any countervailing concerns Defendants may raise—like the federal government's interest in saving money—pale by comparison.

Constitutional violations also weigh heavily in favor of an injunction. *Betschart v. Oregon*, 103 F.4th 607, 625 (9th Cir. 2024). When Plaintiffs show "a likelihood that Defendants'



Department of Justice
100 SW Market Street
Portland, OR 97201
971-673-1880 / Fax: 971-673-5000

policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal.*, 757 F.3d at 1069; *see also Baird*, 81 F.4th at 1042 ("A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [its] favor."). Because Plaintiffs have established a sufficient likelihood of success on the merits, this Court should also find that the third and fourth equitable factors jointly weigh in favor of an injunction.

## CONCLUSION

For the foregoing reasons, the Court should issue a preliminary injunction barring Defendants from withholding any federal Medicaid funding under 42 U.S.C. § 1396c from Plaintiff States for failure to comply with the community engagement requirements at 42 U.S.C. § 1396a(xx).

DATED November 5, 2026.

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: *s/ Scott Kennedy*
SCOTT KENNEDY #260337
BRIAN SIMMONDS MARSHALL #196129
TY BAIR #251894
Senior Assistant Attorneys General
BRAD MULLEN #245461
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Ty.Bair@doj.oregon.gov
Brad.Mullen@doj.oregon.gov

*Counsel for the State of Oregon*

Respectfully submitted,

**KEITH ELLISON**
Attorney General
State of Minnesota

By: *s/ Brian S. Carter*
BRIAN S. CARTER
Special Counsel
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-7403 (Voice)
(651) 282-5832 (Fax)
brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*

**RAÚL TORREZ**
Attorney General of New Mexico

By: *s/ Mark Noferi*
MARK NOFERI
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, NM 87501
(505) 640-2891
mnoferi@nmdoj.gov

*Counsel for the State of New Mexico*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: *s/ William McGinty*
WILLIAM MCGINTY
Deputy Solicitor General
CRISTINA SEPE
Managing Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Tel (206) 464-7744
william.mcginty@atg.wa.gov
cristina.sepe@atg.wa.gov

*Counsel for the State of Washington*