# EXHIBIT 3

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR MEDICAID & CHIP SERVICES

**SMD #26-001**

**RE: Implementation of "Eligibility Redeterminations," Section 71107 of the "Working Families Tax Cut" Legislation (Public Law 119-21)**

March 6, 2026

Dear State Medicaid Director:

**Introduction**

On July 4, 2025, President Trump signed Public Law 119-21, also known as the "One Big Beautiful Bill Act," which CMS refers to as the "Working Families Tax Cut" (WFTC) legislation, into law. This State Medicaid Director letter (SMDL) is one of a series of guidance documents discussing implementation of specific sections of the WFTC legislation. The purpose of this letter is to describe the changes to eligibility redeterminations made by Section 71107 of the WFTC legislation. Section 71107 amends section 1902(e)(14) of the Social Security Act (the Act) to require that the 50 states and the District of Columbia (hereinafter referred to as "states") complete eligibility redeterminations once every six months, beginning with renewals scheduled on or after January 1, 2027, for most individuals enrolled in the Medicaid adult group under section 1902(a)(10)(A)(i)(VIII) of the Act.[1] This requirement also applies to those described under that section of the Act who are enrolled in coverage "under a waiver" of the state plan (including through a section 1115 demonstration) that provides coverage that is equivalent to minimum essential coverage (MEC)[2] to all individuals described in section 1902(a)(10)(A)(i)(VIII) of the Act. This SMDL provides states with an overview of the changes to federal renewal requirements made by section 71107 of the WFTC legislation, reminds states of federal renewal requirements that continue to apply, and addresses operational considerations for states when implementing 6-month renewals for the affected population.

CMS is committed to supporting states in implementing changes made by the WFTC legislation and anticipates that ongoing partnership and engagement with states and other stakeholders will inform

[1] Although section 2107(e)(1)(J) of the Act makes section 1902(e)(14) of the Act applicable in the Children's Health Insurance Program (CHIP), for all practical purposes section 1902(e)(14)(L) of the Act, which requires states to conduct eligibility renewals once every 6 months for certain non-pregnant adults aged 19 through 64, does not apply to CHIP due to CHIP's prohibition on coverage of non-pregnant adults aged 19 and above in CHIP (section 2111(a) of the Act). Sections 2110(b) and Section 2112 of the Act describe the populations (targeted low-income children and targeted low-income pregnant women) covered under the CHIP state plan.
[2] This refers to MEC as described in section 5000A(f)(1)(A) of the Internal Revenue Code of 1986 and determined in accordance with standards prescribed by the Secretary in regulations.

areas of need for additional guidance.[3] We recognize that planning must begin now, as states begin procurement of new systems and services to support implementation of the broad range of Medicaid provisions in the WFTC legislation, including conducting more frequent renewals as described in this letter.

**Table of Contents**

Introduction ........ 1
Table of Contents ........ 2
Overview of Section 71107 ........ 3
*Current Federal Requirements for Certain Medicaid Beneficiaries* ........ 3
*Populations Subject to 6-Month Renewals* ........ 3
*Exemptions for American Indians and Alaska Natives and Treatment of Other Eligibility Groups* ........ 4
*Implications for Requirement for States to Establish Medicaid Community Engagement Requirements for Certain Individuals per Section 71119 of the WFTC Legislation* ........ 5
Federal Medicaid Renewal Requirements ........ 5
Transitioning to 6-Month Renewals ........ 6
*Option 1: Reschedule Renewal Initiation Dates for Beneficiaries Enrolled as of January 1, 2027* ........ 8
*Option 2: Transition Beneficiaries Enrolled on January 1, 2027, at Their Next Scheduled Renewal* ........ 10
Special Considerations ........ 10
*Households with Different Renewal Schedules* ........ 10
*Movement Between Eligibility Groups at Renewal* ........ 11
*Coordination with Other Human Services Recertifications or Reviews* ........ 12
State Next Steps ........ 12
*Application and Renewal Processing* ........ 12
*Fair Hearing Requests* ........ 12
*State Plan Amendment and Demonstration Changes* ........ 12
*Medicaid Information Technology (IT) System Costs* ........ 13
Closing ........ 14

[3] For more information and guidance about the WFTC legislation, visit the Working Families Tax Cut Legislation page on Medicaid.gov: https://www.medicaid.gov/working-families-tax-cut-legislation.

**Overview of Section 71107**

***Current Federal Requirements for Certain Medicaid Beneficiaries***

Federal regulations at 42 C.F.R. § 435.916 (2023)[4] outline the requirements for states to conduct periodic renewals of eligibility for all beneficiaries. These regulations require states to redetermine eligibility once every 12 months, and no more frequently than once every 12 months, for Medicaid beneficiaries whose financial eligibility is determined using methodologies based on modified adjusted gross income (MAGI) and at least once every 12 months for individuals enrolled in non-MAGI based eligibility groups.[5]

***Populations Subject to 6-Month Renewals***

Section 71107 amends section 1902(e)(14) of the Act to add a new subparagraph (L) that requires states[6] to conduct renewals of eligibility once every 6 months, instead of once every 12 months, for two groups of beneficiaries whose financial eligibility is determined using MAGI methodologies. First, this requirement applies to almost all individuals enrolled under the state plan in the Medicaid adult group described at section 1902(a)(10)(A)(i)(VIII) of the Act. Second, this requirement applies to almost all individuals described in 1902(a)(10)(A)(i)(VIII) who are enrolled in coverage "under a waiver" of the state plan that provides coverage equivalent to MEC to all individuals described at section 1902(a)(10)(A)(i)(VIII) of the Act.[7] Generally, this second group consists of persons who are enrolled in coverage only through a section 1115 demonstration that provides MEC to the entire adult group population, but who would have been eligible in the state plan adult group if the state had chosen to cover it.

---

[4] Section 71102 of the WFTC legislation imposed a m
enforcing certain amendments made by a CMS final rule entitled "Medicaid Program; Streamlining the Medicaid, Children's Health Insurance Program, and Basic Health Program Application, Eligibility Determination, Enrollment, and Renewal Processes," 89 Fed. Reg. 22,780 (April 2, 2024) (the "2024 E&E Final Rule"), https://www.federalregister.gov/documents/2024/04/02/2024-06566/medicaid-program-streamlining-the-medicaid-childrens-health-insurance-program-and-basic-health. The moratorium applies to certain provisions of the 2024 E&E Final Rule that had a compliance date after July 4, 2025, the date the WFTC legislation was enacted, and ends on September 30, 2034. To comply with the moratorium, CMS refers to the renewal requirements at 42 C.F.R. § 435.916 in effect as of 2023 in this SMDL, which are available at the following link: https://www.ecfr.gov/on/2024-06-02/title-42/chapter-IV/subchapter-C/part-435. For more information on the moratorium, see November 18, 2025, CMCS Informational Bulletin "'Working Families Tax Cut' Legislation, Public Law 119-21: Summary of Medicaid and Children's Health Insurance Program (CHIP) Related Provisions." Available at https://www.medicaid.gov/federal-policy-guidance/downloads/cib11182025.pdf.

[5] In this SMDL, we use the term "renewal" when specifically referring to a periodic renewal of eligibility in accordance with 42 C.F.R. § 435.916(a) and (b) (2023). We use "redetermination(s)" more generally, where the term encompasses changes in circumstances as described in 42 C.F.R. § 435.916(c) and (d) (2023) as well as renewals.

[6] Section 1902(e)(14)(L)(iii) of the Act, added by Section 71107 of the WFTC legislation, defines the term "State" to mean one of the 50 states or the District of Columbia.

[7] Section 1902(e)(14)(L) of the Act is not applicable in states that have not elected to provide coverage to all individuals described in section 1902(a)(10)(A)(i)(VIII) via the state plan or a section 1115 demonstration that provides them with MEC. In a state that does not cover the section 1902(a)(10)(A)(i)(VIII) group under its state plan, and that covers persons described in section 1902(a)(10)(A)(i)(VIII) only through a partial expansion under a section 1115 demonstration, individuals described in section 1902(a)(10)(A)(i)(VIII) would not be subject to the 6-month renewal requirement.

Except for certain individuals exempt from this requirement, any state that provides coverage to the groups described above must redetermine eligibility for individuals in these groups once every 6 months, beginning with renewals scheduled on or after January 1, 2027. This means that, unless otherwise exempt from this requirement, persons who are determined or redetermined eligible in either of these two groups on or after January 1, 2027, will have their eligibility renewed every 6 months. We describe how states should transition affected beneficiaries from a 12-month to a 6-month renewal schedule in more detail later in this letter.

***Exemptions for American Indians and Alaska Natives and Treatment of Other Eligibility Groups***
The 6-month renewal requirement in section 1902(e)(14)(L) of the Act does not apply to the individuals listed below.

- Certain American Indians and Alaska Natives described in section 1902(xx)(9)(A)(ii)(II) of the Act[8] who are enrolled under the state plan in the Medicaid adult group described at section 1902(a)(10)(A)(i)(VIII) of the Act (these individuals are exempted under section 1902(e)(14)(L)(ii) of the Act);
- Certain American Indians and Alaska Natives described in section 1902(xx)(9)(A)(ii)(II) of the Act[9] who are described in section 1902(a)(10)(A)(i)(VIII) of the Act and who are enrolled in coverage "under a waiver" of the state plan that provides coverage equivalent to MEC to all individuals described at section 1902(a)(10)(A)(i)(VIII) of the Act (these individuals are also exempted under section 1902(e)(14)(L)(ii) of the Act);
- Individuals enrolled in other MAGI-based eligibility groups (including individuals described in section 1902(a)(10)(A)(i)(VIII) in a state that does not cover the entire section 1902(a)(10)(A)(i)(VIII) group under its state plan or a section 1115 demonstration); and
- Individuals enrolled in non-MAGI-based eligibility groups.

In accordance with 42 C.F.R. § 435.916 (2023), states must continue to conduct renewals once every 12 months for the American Indians and Alaska Natives discussed above. Similarly, states must continue to conduct renewals once every 12 months for all individuals enrolled in a MAGI-based eligibility group other than the two groups discussed above that are subject to the 6-month renewal requirement, and at least once every 12 months for individuals enrolled in non-MAGI based eligibility groups. For individuals enrolled in other MAGI-based eligibility groups, section 1902(e)(14)(L) of the Act neither requires 6-month renewals, nor provides an option for states to conduct renewals once every 6 months for such individuals.

For the purposes of this SMDL, we refer to the individuals subject to 6-month renewals under either the state plan or a demonstration collectively as the "adult expansion group."

---

[8] American Indians and Alaska Natives exempt from the 6-month renewal requirement are: an Indian or Urban Indian (as such terms are defined in paragraphs (13) and (28) of section 4 of the Indian Health Care Improvement Act); a California Indian described in section 809(a) of such Act; or those who have otherwise been determined eligible as an Indian for the Indian Health Service under regulations promulgated by the Secretary.
[9] See Footnote 8.

***Implications for Requirement for States to Establish Medicaid Community Engagement Requirements for Certain Individuals per Section 71119 of the WFTC Legislation***[10]

We note that many of the individuals who will be required to undergo renewals once every six months pursuant to section 1902(e)(14)(L) of the Act will also be required to demonstrate community engagement as further described in section 1902(xx) of the Act (added by section 71119 of the WFTC legislation) beginning January 1, 2027.[11] Thus, states will generally need to make policy, operational, and system updates to comply with sections 71107 and 71119, including a determination of compliance with community engagement, at each scheduled renewal on or after January 1, 2027. Regardless of whether a member of the "adult expansion group" is subject to community engagement requirements, all individuals enrolled in the "adult expansion group" will be subject to 6-month renewals. CMS plans to release future guidance to states on how to implement the community engagement requirements and implications of these requirements for renewals of eligibility.

**Federal Medicaid Renewal Requirements**

While section 1902(e)(14)(L) of the Act changes the frequency of renewals for individuals in the "adult expansion group" from once every 12 months to once every 6 months, the provision did not amend the steps states must take to complete renewals under CMS regulations. States must continue to complete renewals for all MAGI and non-MAGI beneficiaries as described in requirements at 42 C.F.R. § 435.916 (2023), regardless of whether someone is subject to renewals once every 6 or 12 months. To support states as they implement section 1902(e)(14)(L) of the Act, we focus below on the renewal requirements applicable to all MAGI-based groups, including the "adult expansion group" where individuals are subject to the 6-month renewal requirement.

As described in 42 C.F.R. § 435.916(a)(2) (2023), all states must begin the renewal process by checking available, reliable information contained in the individual's account or more current information available to the state (including information accessed through certain data sources) to attempt to redetermine eligibility without contacting the beneficiary, known as an *ex parte* renewal. When eligibility cannot be renewed based on available information, states must send a prepopulated renewal form to the beneficiary, and request the information needed to complete the redetermination of eligibility at renewal, including, as appropriate, documentation to verify information provided or updated by the beneficiary on the renewal form.[12] States must provide beneficiaries with a minimum of 30 days to return the prepopulated renewal form and any other requested information.[13]

---

[10] See the November 18, 2025, CMCS Informational Bulletin "'Working Families Tax Cut Legislation,' Public Law 119-21: Summary of Medicaid and Children's Health Insurance Program (CHIP) Related Provisions" for general information on the Medicaid and CHIP provisions contained in the WFTC legislation, including additional information on section 71119. Available at https://www.medicaid.gov/federal-policy-guidance/downloads/cib11182025.pdf.

[11] See the December 8, 2025, CMCS Informational Bulletin "Section 71119 of the WFTC legislation: Requirements for States to Establish Community Engagement Requirements for Certain Individuals" for additional information on the community engagement requirements. Available at https://www.medicaid.gov/federal-policy-guidance/downloads/cib12082025.pdf.

[12] *See* 42 C.F.R. §§ 435.916(a)(3) (2023) and 435.952(a)-(d).

[13] *See* 42 C.F.R. § 435.916(a)(3)(i)(B) (2023).

States must consider eligibility on all bases prior to making a determination of ineligibility[14] and provide a minimum of 10 days advance notice and fair hearing rights prior to termination or other adverse action, in accordance with 42 C.F.R. §§ 435.917-918 and 42 C.F.R. Part 431 Subpart E. For individuals subject to the community engagement requirement who fail to demonstrate community engagement at renewal, states must follow the procedures and notice requirements for non-compliance at section 1902(xx)(6) of the Act. CMS reminds states that they generally must complete the renewal process by the end of the beneficiary's eligibility period to comply with the requirement at section 1902(e)(14)(L) of the Act to redetermine eligibility once every 6 months for beneficiaries subject to 6-month renewals.

**Transitioning to 6-Month Renewals**

Section 1902(e)(14)(L)(i) of the Act requires that "with respect to redeterminations of eligibility for medical assistance … scheduled on or after the first day of the first quarter that begins after December 31, 2026, a State shall make such a redetermination once every 6 months" for individuals in the "adult expansion group."

For applicants who apply and their effective date of coverage in the "adult expansion group" is on or after January 1, 2027, the state must provide a 6-month eligibility period. CMS reminds states that an individual's effective date of coverage (which marks the start of their eligibility period) is determined in accordance with the state plan and may be either the date of application or the first day of the month of application.[15] Any months of coverage provided prior to that date under the retroactive eligibility period, per sections 1902(a)(34) and 1905(a) of the Act, would not be included in an individual's eligibility period.[16] The following is an illustrative example of how states must establish eligibility periods for new applicants subject to the new 6-month renewal requirement.

- Example 1: David applies for Medicaid on June 5, 2027, and he is subject to the community engagement requirement. In his state, applicants must demonstrate compliance with community engagement one month before application. David demonstrates compliance with community engagement and meets all other eligibility criteria; thus, David is determined eligible for the "adult expansion group." David's eligibility period begins on June 1, 2027, consistent with the state's election to begin coverage on the first day of the month of application, and extends for 6 months through November 30, 2027. The state starts its renewal process approximately 90 days in advance of the end of an individual's eligibility period end date and initiates David's first renewal on September 1, 2027. The state must determine whether David meets or is not subject to the community engagement requirements, along with all other factors of eligibility for the "adult

[14] *See* 42 C.F.R. § 435.916(f)(1) (2023).
[15] *See* 42 C.F.R. § 435.915(b) and (c).
[16] Effective for applications made on or after January 1, 2027, section 71112 of the WFTC legislation amends sections 1902(a)(34) and 1905(a) of the Act to shorten the retroactive eligibility period in Medicaid. Notably, individuals enrolled in the Medicaid adult group under section 1902(a)(10)(A)(i)(VIII) of the Act will be limited to a maximum of one month of retroactive eligibility prior to the month of application. CMS expects to issue additional guidance regarding section 71112 of the WFTC legislation.

expansion group," at renewal. If David remains eligible under the "adult expansion group" at renewal, the state would renew his coverage for another 6-month eligibility period (December 1, 2027, through May 31, 2028).

States have two options for implementing the new 6-month renewal requirement for individuals who are already enrolled in a 12-month eligibility period in the "adult expansion group" on January 1, 2027, and whose annual renewals have already been scheduled to occur in 2027. CMS is offering states these two implementation options because the language in the statute, particularly the reference to redeterminations "scheduled on or after" January 1, 2027, is ambiguous with respect to eligibility periods that began before 2027 but end in 2027. Specifically, "with respect to redeterminations scheduled on or after" could describe the date on which a previously scheduled renewal is set to be initiated in 2027 or could instead refer to the act of setting a future initiation date for an individual's next renewal. The statutory language could be read either way and does not expressly require states to reschedule renewal initiation dates that have already, as of January 1, 2027, been set to occur on or after January 1, 2027.

Under both options, CMS interprets "scheduled" to refer to the date when the state initiates the renewal process, because the renewal process is not a single moment or day and can take several weeks or months. Under option 1, "scheduled" refers to a renewal initiation date, and under option 2, "scheduled" refers to the act of setting a future renewal initiation date.[17] Each state designs its renewal process to build in sufficient time to take all actions required to complete the renewal, including providing notice of the eligibility decision, by the end of an individual's eligibility period. This also includes determining how far in advance to initiate renewals based on the state's policies and processes. States typically begin renewals for a cohort of individuals at the same time based on the date those individuals' eligibility periods end; however, the renewal for each individual in the cohort will be completed at different times depending on whether the state must request additional information from the individual and how long someone takes to return their renewal form or additional information that may be requested. The timing of when states initiate the renewal process drives the rest of the process and directly impacts the state's ability to conduct a timely renewal, which results in setting a new start and end date for the subsequent eligibility period for individuals who remain eligible. We consider the key date to be the date on which renewals for the cohort are initiated, rather than the date on which a particular individual's renewal is completed, because the initiation date generally is known in advance and is established consistently for all individuals with the same eligibility period, based on state processes. This differs from the actual, individual-specific renewal completion date, which is not known in advance and can be different for different individuals, as noted.

Under Option 1, the state would shorten the eligibility period for beneficiaries enrolled in the "adult expansion group" whose renewal is set to be initiated on or after January 1, 2027, to provide the individual as close to a 6-month eligibility period as possible from the effective date of their last

[17] When a state determines an individual eligible for Medicaid and grants a new eligibility period, the state is considered to have scheduled the initiation date for the next renewal.

eligibility determination. The state would provide a 6-month eligibility period at that renewal, if applicable (i.e., if the individual is still eligible in the "adult expansion group"). States taking option 1 would move an individual's previously-set 2027 renewal initiation date to an earlier date, but the newly scheduled date could not be earlier than January 1, 2027. If the renewal were rescheduled to be initiated before January 1, 2027, it would no longer be a renewal "scheduled on or after" January 1, 2027, and therefore section 1902(e)(14)(L)(i) would not apply. For this reason, the earliest a state could reschedule already-set 2027 renewal initiation dates would be January 1, 2027 (practically, January 4, 2027, which is the first business day of the year) to provide as close to a 6-month eligibility period as possible for affected individuals.

Under Option 2, the state would not reschedule already-set 2027 renewal initiation dates, which would be considered to have been scheduled when the individual's current eligibility period was established in 2026. During the first renewal that is initiated in 2027, the state would provide a 6-month eligibility period (if applicable).

States are reminded that regardless of when a beneficiary transitions to a 6-month renewal schedule, the state must redetermine eligibility between regular renewals when someone experiences a change in circumstances that potentially affects eligibility, as further described in 42 C.F.R. § 435.916(d) (2023).

***Option 1: Reschedule Renewal Initiation Dates for Beneficiaries Enrolled as of January 1, 2027***
Under this option, states would reschedule previously set 2027 renewal initiation dates to transition beneficiaries already enrolled in the "adult expansion group" before 2027 to as close to a 6-month renewal cadence as possible, but would not reschedule these renewal initiation dates to a date before January 1, 2027. States will have to weigh several operational considerations if they take this option. Many individuals will have been enrolled for an extended time as of January 1, 2027, such that it is impossible to initiate and complete their renewals to give them a 6-month eligibility period. States taking option 1 would need to reschedule renewal initiation dates for these individuals promptly and shorten their eligibility periods to be as close to 6 months as is practically feasible. Other individuals will have been enrolled for a shorter time on January 1, 2027, but would need to have their previously scheduled 2027 renewal initiations rescheduled to a new date that would give them a 6-month eligibility period. Accordingly, states implementing this option would need to identify individuals whose renewal initiation dates would need to be rescheduled (and when), initiate a large volume of renewals as early as January 1, 2027, and maintain that renewal schedule into the future. States would also need to ensure they did not shorten an individual's eligibility period in a manner that is inconsistent with Section 1902(e)(14)(L)(i) of the Act by renewing eligibility more frequently than once every 6 months (that is, states should not shorten the previously approved eligibility period of a person enrolled in the "adult expansion group" as of January 1, 2027 so that it is shorter than 6 months).

- Example 2: Jill is enrolled in the "adult expansion group" before January 1, 2027, and her eligibility period is May 1, 2026, to April 30, 2027. The state elects to immediately transition beneficiaries already enrolled in the "adult expansion group" on January 1, 2027, to a 6-month

renewal cycle. Because Jill's eligibility period began more than 6 months before January 1, 2027, the state would initiate Jill's renewal on January 4, 2027 (the first business day after the New Year's Day holiday). If Jill continues to be eligible for the "adult expansion group" and meets all factors of eligibility, the state would grant Jill a 6-month eligibility period based on the date on which Jill's eligibility is renewed.

- Example 3: Max is enrolled in the "adult expansion group" before January 1, 2027, and his original 12-month eligibility period is November 1, 2026, to October 31, 2027. The state elects to immediately transition beneficiaries already enrolled in the "adult expansion group" on January 1, 2027, to a 6-month renewal cycle. Because Max has not yet received 6 months of coverage, the state adjusts Max's eligibility period from 12 to 6 months, and his eligibility period now ends April 30, 2027. The state notifies Max of his new renewal date and initiates the renewal on March 1, 2027, with the cohort of renewals due in April 2027. If Max continues to be eligible for the "adult expansion group" and meets all factors of eligibility at his next renewal, the state would grant Max a 6-month eligibility period, May 1, 2027, through October 31, 2027.

- Example 4: James is enrolled in the "adult expansion group" before January 1, 2027, and his original 12-month eligibility period is September 1, 2026, to August 31, 2027. The state elects to immediately transition beneficiaries already enrolled in the "adult expansion group" on January 1, 2027, to a 6-month renewal cycle. The state adjusts James' eligibility period from a 12-month to a 6-month eligibility period. As a result, his eligibility period now ends February 28, 2027. Because the state takes about 60 days to complete all the steps in the renewal process, the state initiates renewals on January 4, 2027 (the first business day after the New Year's Day holiday), for beneficiaries whose eligibility period ends on February 28, 2027. Accordingly, James is moved into the February 2027 renewal cohort and his renewal is initiated on January 4, 2027, so the state has sufficient time to complete his renewal by February 28 (the end of his eligibility period). If James continues to be eligible for the "adult expansion group" and meets all factors of eligibility at his next renewal, the state would grant James a 6-month eligibility period, March 1, 2027, through August 31, 2027.

States that elect this option would need to notify individuals who were previously granted a 12-month eligibility period of the change to their eligibility period. In addition, CMS considers a reduction in the length of a beneficiary's eligibility period to be an "action" under 42 C.F.R. § 431.201, because the state is reducing the individual's eligibility.[18] Thus, the state must provide the beneficiary with a minimum of 10 days advance notice with fair hearing rights. States would also need to make the necessary system and process changes to handle the increased volume of renewals that will occur semi-annually.

---

[18] This eligibility reduction is similar to the scenario when a beneficiary transitions from the parents and other caretaker relatives eligibility group in Medicaid to time-limited transitional medical assistance (TMA). For more information, see frequently asked question (FAQ) # 11 of the November 22, 2023 *Frequently Asked Questions to Support the Return to Normal Eligibility Operations: Transitional Medical Assistance and Medical Support*, available at: https://www.medicaid.gov/federal-policy-guidance/downloads/faq11222023.pdf.

***Option 2: Transition Beneficiaries Enrolled on January 1, 2027, at Their Next Scheduled Renewal***
Alternatively, because the language in section 1902(e)(14)(L) that reads "scheduled on or after" January 1, 2027, could also refer to the act of scheduling a renewal initiation date, states could retain an individual's 12-month eligibility period granted before January 1, 2027, not reschedule that individual's already scheduled 2027 renewal initiation date, and (if applicable) provide a 6-month eligibility period as part of that already-scheduled 2027 renewal for beneficiaries who remain eligible in the "adult expansion group."

- Example 5: Jane is enrolled in the "adult expansion group" before January 1, 2027, and her Medicaid eligibility period is August 1, 2026, through July 31, 2027. She is subject to the community engagement requirements that become applicable in January 2027, and her state elects to verify one month of community engagement at renewal. The state takes approximately 90 days to complete all steps in the renewal process before the end of an eligibility period and initiates Jane's renewal on May 3, 2027, as was already planned. The state determines she continues to be eligible for the "adult expansion group," and that she meets the community engagement requirements that became applicable on January 1, 2027. Because Jane's previously scheduled renewal process was initiated in May 2027 based on the date her eligibility period ends (July 31, 2027), the state schedules Jane's next renewal for January 31, 2028, which is 6 months after the date on which her new eligibility period begins, August 1, 2027.

Because this option allows states to continue processing renewals in 2027 based on (and without moving) already-scheduled renewal initiation dates, it enables states to avoid a large cluster of renewals in January 2027 due to having to redetermine eligibility for many beneficiaries enrolled in the "adult expansion group" at once, and thus would also enable states to retain a more even renewal distribution into the future.

**Special Considerations**

***Households with Different Renewal Schedules***
Section 1902(e)(14)(L) of the Act does not modify states' obligations to determine and redetermine Medicaid eligibility on an individual basis as required by 42 C.F.R. § 435.916 (2023).[19] However, CMS recognizes that section 1902(e)(14)(L) of the Act will in many instances result in members of the same household having different eligibility periods because they qualify for the program under different eligibility groups that have different eligibility periods (e.g., 6 months versus 12 months). States are reminded that, because of requirements regarding the frequency at which renewals must be

[19] The regulations require that for individuals whose Medicaid eligibility is based on MAGI states complete a redetermination of eligibility based on available information for each individual in the household, regardless of the eligibility of others in the household unit. 42 C.F.R. § 435.916(a)(2) (2023) ("[t]he agency must make a redetermination of eligibility without requiring information from *the individual* if able to do so based on reliable information contained in *the individual's account* or other more current information available to the agency" (emphasis added)). 42 C.F.R. § 435.916(b) (2023) states that for individuals whose Medicaid eligibility is determined on a basis other than MAGI, that states must make a redetermination of eligibility in accordance with the provisions of paragraph (a)(2), if sufficient information is available to do so, and the regulations further specify that the agency must furnish Medicaid "[f]or each individual…whose eligibility is being renewed," if found eligible, per 42 C.F.R. § 435.911(c) (2023).

conducted, they may neither shorten nor extend an individual's eligibility period to align renewal dates across all members of a household in a manner that is inconsistent with section 1902(e)(14)(L) of the Act, 42 C.F.R. § 435.916(a) (2023), and a state's election described in section 1902(e)(8) of the Act and 42 C.F.R. § 435.916(b) (2023).

However, if the beneficiary whose eligibility is being renewed provides information that affects the eligibility of other household members, such as a change in income or household composition, then the state must promptly act on that information for the affected household member and redetermine eligibility per 42 C.F.R. § 435.916(d) (2023).

***Movement Between Eligibility Groups at Renewal***

When redetermining eligibility at renewal, states must consider all bases of eligibility prior to making a determination of ineligibility, as described in 42 C.F.R. § 435.916(f)(1) (2023). As a result, Medicaid beneficiaries might be redetermined eligible for a different eligibility group than the one in which they are enrolled. In some cases, this would result in an individual moving between eligibility groups that have different eligibility periods (e.g., 12 months or 6 months). For individuals who are potentially eligible on another basis, we remind states that they must account for any additional factors of eligibility during the redetermination process that are relevant for a group in which the individual is potentially eligible,[20] including compliance with or exception from community engagement requirements, if applicable. States must notify an individual determined eligible for a different eligibility group of the decision as described in 42 C.F.R. §§ 435.917-918 and Part 431 Subpart E, as applicable. When moving a beneficiary from an eligibility group with a 12-month eligibility period to a group with a 6-month eligibility period, the state must also provide a minimum of 10 days advance notice with fair hearing rights because CMS considers that to be a reduction in eligibility and therefore to be an "action" under 42 C.F.R. § 431.201.[21] Because the state is granting a new eligibility period following a successful renewal, the state will apply the appropriate eligibility period for the new group.

- Example 6: Mary is enrolled in the eligibility group for pregnant women in a state that provides 12 months of postpartum coverage (as authorized under section 1902(e)(16) of the Act). Her 12-month extended postpartum coverage period ends May 31, 2027, so the state initiates her renewal on March 1, 2027. At renewal, the state determines that Mary is no longer eligible for the pregnant women group and considers eligibility on all other bases. Mary is potentially eligible for the "adult expansion group," which means the state must also evaluate whether Mary meets all factors of eligibility, including compliance with or exception from community engagement requirements (as applicable).

  The state determines that Mary is eligible for the "adult expansion group," provides at least 10 days advance notice and fair hearing rights prior to the effective date of this change and renews her eligibility for 6 months (June 1, 2027, through November 30, 2027).

[20] *See* section 1902(a)(10) of the Act and 42 C.F.R. §§ 435.916(f)(1) (2023) and 435.911(c)(2) and (d)(1) (2023).
[21] See Footnote 17 above.

***Coordination with Other Human Services Recertifications or Reviews***

For some individuals, a 6-month Medicaid renewal may align with the 6-month review or recertification for another human services program. However, this does not change the new renewal requirements of section 1902(e)(14)(L) of the Act. For example, states may not delay the completion of a Medicaid renewal if the beneficiary did not complete a question on the form that is only needed to recertify eligibility for the Supplemental Nutrition Assistance Program (SNAP). In addition, while states may include information and questions only needed for other programs on a multi-benefit renewal form, they must ensure multi-benefit renewal forms include clear instructions on which questions must be answered and what information must be provided for purposes of renewing Medicaid eligibility.

**State Next Steps**

***Application and Renewal Processing***

CMS recognizes that transitioning to a 6-month renewal schedule will result in a change in state operations and workload. States should make every effort now to maintain timely application and renewal processing or, if needed, resolve application and renewal backlogs. States that do not resolve existing application or renewal backlogs or develop new backlogs prior to implementation of section 71107 will have reduced capacity to successfully implement the eligibility provisions of the WFTC legislation and be at greater risk of compliance action.[22]

***Fair Hearing Requests***

Similarly, CMS recognizes that transitioning to a 6-month renewal schedule could lead to an increase in fair hearing requests. States should make every effort now to maintain timely fair hearing request processing and plan for sufficient capacity to process additional requests or, if needed, resolve fair hearing request backlogs. States that do not resolve existing fair hearing backlogs or develop new backlogs prior to implementation of section 71107 will have challenges in successfully addressing the potential increase resulting from the implementation of the eligibility provisions of the WFTC legislation.

***State Plan Amendment and Demonstration Changes***

To comply with section 1902(e)(14)(L) of the Act, states that cover the adult group under section 1902(a)(10)(A)(i)(VIII) in their Medicaid state plan must submit a state plan amendment (SPA) through MACPro attesting that the state will conduct eligibility redeterminations once every 6 months for the relevant population. CMS is developing a MACPro reviewable unit, targeted for release in the second half of 2026, so that states may submit this SPA no later than March 31, 2027, to ensure compliance by January 1, 2027. States that do not provide coverage to the eligibility groups

---

[22] Section 71106 of the WFTC legislation amends section 1903(u)(1) of the Act to specify, beginning in Fiscal Year 2030, when the Secretary must issue eligibility-related disallowances and establishes new restrictions on the Secretary's authority to issue good faith waivers for states with Medicaid eligibility-related error rates exceeding 3 percent. CMS expects to provide additional guidance to states on implementation of this provision.

subject to the 6-month renewal requirement do not need to submit a SPA to adjust the frequency of renewals in their state plan. States may contact their Medicaid state lead for technical assistance to complete the Medicaid SPA template when it becomes available.

States with individuals described in 1902(a)(10)(A)(i)(VIII) who are enrolled in coverage "under a waiver" of the state plan that provides coverage equivalent to MEC to all individuals described in section 1902(a)(10)(A)(i)(VIII) should contact their section 1115 demonstration project officer.

***Medicaid Information Technology (IT) System Costs***
In addition to submitting a SPA, states will need to make process and system changes to operationalize 6-month renewals as well as other eligibility changes made by the WFTC legislation. These interconnected policy and system requirements should function seamlessly together. Equally important is ensuring the vendors supporting state implementation clearly understand their role and what is expected of them to enable the state to meet federal requirements and the state's program goals. Without proper alignment between policy design and technological capabilities, states might create administrative burdens that undermine program effectiveness and cost-efficiency. When establishing state-specific policies, states should consult with their system implementation teams to ensure policies can be operationalized in their systems.

CMS recognizes the program changes will require IT system work to fulfill policy implementation. State Medicaid agency IT system costs necessary to support requirements could be eligible for enhanced FFP. Approval of enhanced FFP requires the submission of an Advanced Planning Document (APD). A state may submit an APD requesting approval for enhanced FFP for the design, development, and installation of their Medicaid Enterprise Systems (MES) initiatives contributing to the economic and efficient operation of the program, or for the operations of these systems (including maintenance).[23]

States should refer to 45 C.F.R. Part 95 Subpart F – *Automatic Data Processing Equipment and Services-Conditions for FFP* for the specifics related to APD submission. States should refer to 42 C.F.R. Part 433 Subpart C –*Mechanized Claims Processing and Information Retrieval Systems* for the specifics related to systems approval.

[23] August 6, 2025, State Health Official Letter, "Streamlining Medicaid Enterprise Systems (MES) Templates to Improve Monitoring and Oversight to Ensure Fiscal Integrity." Available at www.medicaid.gov/federal-policy-guidance/downloads/sho25003.pdf.

**Closing**

CMS is committed to supporting state efforts to complete timely and accurate Medicaid renewals of eligibility. CMS is available to provide ongoing technical assistance and support to states to implement 6-month renewals for the "adult expansion group" and support eligibility and enrollment operations as states implement all Medicaid-related provisions of the WFTC legislation. For additional information about this SMDL, please email MedicaidReforms@cms.hhs.gov.

Sincerely,

/s/

Dan Brillman
Deputy Administrator, CMS
Director, Center for Medicaid and CHIP Services